HENRY, Judge,
dissenting.
I respectfully dissent because I believe the district court’s decision — that the interests of judicial economy and an expeditious trial warranted separate trials in this matter — makes the application of claim preclusion improper in this case. This case does not turn on the merits of the plaintiffs case, or cases. Rather, it simply turns on the fact that when a court determines to allow claims to proceed separately, the parties may — indeed should' — rely on the court’s order. Any other result would mean that parties may never rely on a district court’s decision to allow separate claims to be litigated separately, whether the court is motivated by trial economy, prejudice to the parties, or simple fairness. The idea that, having convinced the court (maybe even correctly) that claims should be tried separately, the plaintiff should subsequently suggest the court reconsider the issue because there may be a claim preclusion problem takes away the power of courts to adequately run their dockets. I also disagree with any suggestion that, even though a plaintiff has prevailed on a hostile motion to consolidate (and the defendant has in essence ratified that ruling by arguing it would be prejudiced by admission of evidence related to the other matter), he has waived any right to object to the application of res judicata because he did not ask the court to reconsider its decision.
Several reasons exist for this conclusion. First, a full and fair opportunity to present a claim, whether an essential element or an exception, is essential to any fair application of claim preclusion. And, just as courts have the power to expressly limit the preclusive effects of judgments, this same power is inherent in a court’s decision that claims should be tried separately. Otherwise, the plaintiff, who is precluded from presenting evidence from the second, unconsolidated claim in the first law suit, is denied a full and fair opportunity to litigate the unconsolidated claim if preclusion is applied. Second, Clark v. Haas Group, Inc., 953 F.2d 1235 (10th Cir.1992) is of arguable validity, and a close reading of the case reveals that we are not required to apply claim preclusion in this case under Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329 (10th Cir.1988). Finally, any settlement of such a claim must be construed to effect the intention of the parties, and it is clear from this record that the settlement did not reflect Mr. Yapp’s willingness to waive the second claim.
I. Full and Fair Opportunity and the Court’s Power to Limit Preclusion
A. Full and Fair Opportunity
The majority argues that the requirement of “full and fair opportunity to litigate” is an “exception.” See majority opinion at note 4. However, the district court and the parties believed that it was an “element” of claim preclusion. See Aplt’s App., vol. I, at 251 (THE COURT: “The parties agree, and I don’t think there is any dispute as to the elements of the res judicata, final judgment on the merits, the *1233 same parties, a full and fair opportunity to litigate, and the same cause of action.”) (first and third emphasis added). Further, the Supreme Court has stated, and we have held, that application of claim preclusion requires a full and fair opportunity to litigate. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 n. 22, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (“While our previous expressions of the requirement of a full and fair opportunity to litigate have been in the context of collateral estoppel or issue preclusion, it is clear ... that invocation of res judicata or claim preclusion is subject to the same limitation.”); Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir.1997) (stating that the fourth factor necessary for claim preclusion is “a full and fair opportunity to litigate”), cert. denied, — U.S. —, 118 S.Ct. 1396, 140 L.Ed.2d 654 (1998).
I am not sure whether a full and fair opportunity is an element, or an exception, or if it is an exception, whether it should nonetheless be treated like an element. Regardless, a full and fair opportunity to litigate is essential to the application of claim preclusion. Professor Wright notes:
The central proposition of res judicata remains, as it has always been, that a party who has had a full opportunity to present a contention in court ordinarily should be denied permission to assert it on some subsequent occasion.
Charles Alan Wright, Law of Federal Courts § 100A (4th ed.1983) (quotation omitted). Like the majority, Professor Wright indicates that a full and fair opportunity is sometimes called an “exception,” however, he concludes that it is nevertheless essential:
Neither claim preclusion nor issue preclusion can apply unless the party against whom preclusion is asserted had a “full and fair opportunity” to litigate the claim or issue in the first action. This is recognized in the exceptions to the rule of claim preclusion.
Id. (citing Kremer, 456 U.S. at 481 n. 22, 102 S.Ct. 1883). Thus, I believe that whether it is characterized as an exception or an essential element, it is clear that a full and fair opportunity to litigate is essential to the application of claim preclusion.
In Louis Cook Plumbing & Heating, Inc. v. Frank Briscoe Co., 445 F.2d 1177 (10th Cir.1971), our court dealt with this issue. In that case, a contractor had brought a prior action against the government under the Miller Act, 40 U.S.C. § 270, for labor and material supplied in the performance of a government contract. At the time of judgment, in the colloquy between the court and counsel for the plaintiff, counsel asked the court to enter this judgment “without prejudice to the plaintiff to file an action in negligence or on any other theory of law.” Id. at 1178. In response, the trial judge replied, “No, I would not care to put that in the formal judgment. I have in essence said that in my findings, and I think it is clear, that the whole basis of the court’s decision is purely the liability of the defendants under the Miller Act Bond, and nothing else.” Id.
This court then considered a subsequent action, related to the same project, in which the defendant-appellee raised the defenses of res judicata, estoppel, election of remedies, and waiver. Below, the trial judge — similarly to this case — had ruled that the plaintiffs claims were barred by the judgment in the prior Miller Act case. In reversing the decision below, our court concluded:
We also conclude that the doctrine of res judicata does not bar appellant Cook’s present action.... We fully recognize that even though the existence of a separate cause of action sometimes may not be dispositive of the issue of res judica-ta, such rule cannot apply here because Cook was actually denied the right to litigate any issue in the prior action except Miller Act questions.
Id. at 1179 (emphasis added). Thus, while the judge in Louis Cook could have expressly reserved the plaintiffs right to *1234 proceed in the second case, the judge felt it was unnecessary, that plaintiffs right to proceed was implicit in his ruling. On appeal, we did not apply claim preclusion. While it is true that the court found that the case involved two distinct causes of action, the court went on to specifically acknowledge that the existence of a separate cause of action is not always the dis-positive issue in the application of claim preclusion where a party was actually denied the right to litigate an issue in the prior action.
B. The District Court has the Power . to Control Preclusion and its Decision Meant the Second Claim Would Not Be Heard in the First Action.
Again, Professor Wright, this time joined by Professors Miller and Cooper, states the black-letter law:
Despite the general rule that a court cannot dictate preclusion consequences at the time of deciding a first action, it should have power to narrow the ordinary rules of claim preclusion. A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion.
18 Wright, Miller & Cooper, Federal Practice and Procedure § 4413 (1981). Further, the Restatement (Second) Judgments § 26(l)(b) provides a specifically defined “exception” to the application of claim preclusion where the court “has expressly reserved the plaintiffs right to maintain the second action.” This provision is not directly applicable in this case as there is no “express” reservation. However, the comments to this section of the Restatement explain the practical litigation realities that require a trial court to be able to dictate the preclusive effects of a judgment.
It may appear in the course of an action that the plaintiff is splitting a claim, but that there are special reasons that justify his doing so, and accordingly that the judgment in the action ought not to have the usual consequences of extinguishing the entire claim; rather the plaintiff should be left with an opportunity to litigate in a second action that part of the claim which he justifiably omitted from the first action.
Restatement (Second) Judgments § 26(l)(b), cmt. b (emphasis added).
Although the black-letter rule is in the context of a judgment whose preclusion is expressly limited by the court, there is no functional difference between such a judgment and a ruling that the claims are going to be tried separately. In the case at bar, we have a decision, expressly made by the district court after argument and consideration, that Mr. Yapp’s causes of action would be best tried in separate trials, and that the claims would in fact be tried in separate trials. In its order, the district court specifically found that the “Plaintiff has stated valid reasons for filing the two cases separately and separate trials will be conducive to expedition and economy.” Aplt’s App., vol. II, at 69. Courts clearly have the power to control the litigation before them, and the plaintiff, after having convinced the court not to consolidate issues that would be better tried separately, clearly could not present arguments and evidence from the second case in the first action. Further, as discussed supra section III, the defense moved to exclude evidence from the second trial from being admitted into the first action because the evidence was “irrelevant,” would cause “confusion of the issues,” would “unduly delay” the trial, and would be a “waste of time.” Aplt’s App., vol. I, at 91-92. Under these circumstances, application of preclusion to countermand the court’s decision that the matters would be best tried separately clearly results in a failure to provide Mr. Yapp a “full and fair opportunity to litigate,” an important part of the “central proposition” of res judicata. The mere fact that the plaintiff persuaded the court that it made sense to separate the claims should not foreclose the plaintiff from continuing to *1235 maintain his second claim, any more than had the plaintiff persuaded the court to limit the preclusive effects of its judgment.
II. Clark and Petromanagement
A. Clark
I share my colleagues’ concerns about the desirability of Clark v. Haas Group, Inc., 953 F.2d 1235 (10th Cir.1992). See majority opinion at note 6, and accompanying text. However, those concerns aside, I do not find that Clark is dispositive in this case. Clark applies the transactional approach to claim preclusion first adopted by this circuit in Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir.1988). However, whether Mr. Yapp’s claims constitute the “same transaction” is only one factor necessary for claim preclusion. And while it may be true that the district court erred in denying the defendant’s motion to consolidate under the holding of Clark, as in Petromanagement, “[wjhether the court abused its discretion in denying [the] motion to consolidate is not raised in this appeal.” Id. at 1334. Rather, the disposi-tive issue before the court is what the preclusive effect should be of the district court’s ruling that it was proper for the two causes of action to be tried separately. In my view, under the facts of this case, the district court’s denial of the motion to consolidate eliminated the possibility of claim preclusion in the second action because to conclude otherwise would deny Mr. Yapp a full and fair opportunity to litigate his wrongful discharge claim.
B. Petromanagement
I have been unable to find any case law addressing the preclusive effect of a denial of a motion to consolidate other than Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir.1988). At first blush, one might think that the holding of Petromanagement would require the application of claim preclusion in this case.
However, the holding of Petromanagement is very narrow. In Petromanagement, the plaintiff, an oil and gas corporation, attempted to use consolidation to add additional remedies to its already existing breach of contract action seeking recission and restitution. The plaintiff filed a second, separate claim for breach of contract (the same breach by the same parties) seeking actual and punitive damages. The plaintiff then filed a motion to consolidate this second claim with its first claim for recission and restitution “shortly before [the first action] was scheduled to go to trial.” Petromanagement, 835 F.2d at 1331. The plaintiff argued that the “actions involve common parties as well as common questions of law and fact.” Id. at 1332. However, the judge refused to allow the plaintiff to consolidate the virtually identical actions because consolidation “would delay the trial” of the first action. Id. at 1334 (the court further denied plaintiffs motion to strike the first case from the trial docket and plaintiffs motion to dismiss the first action without prejudice). The judge, however, did not address the merits of the motion to consolidate.
Ultimately, rather than go to trial without punitive and actual damages being available remedies, Petromanagement stipulated to a dismissal with prejudice of the first action. A week later, the defendants moved to dismiss the second claim on the ground of claim preclusion. On the issue of claim preclusion, the district court found that “[b]ased upon plaintiffs admissions that these claims involve common parties and arise from a common nucleus of operative facts and upon plaintiffs contentions that these actions ‘would be most conveniently tried in one proceeding,’ and that ‘separate trials of these cases would generate needless expense and needless demands upon the time and resource of all parties,’ it is clear under the ‘transactional’ approach ... that [the second] claim is barred.” Id. at 1332. We upheld this ruling on appeal, holding that district court’s “refusal to consolidate ... does not eliminate the possibility of claim preclusion as to the untimely issues excluded.” 835 *1236 F.2d at 1334 (emphasis added). But that ruling is inapposite here.
The key distinction between Petroman-agement and the present case is that in Petromanagement, in ruling on the motion to consolidate, the judge never substantively ruled that the two cases should be tried in separate trials. Rather, the judge denied consolidation because the motion to consolidate was untimely and would delay trial. Undoubtedly, Petromanagement, if it had not waited until the eve of trial, certainly could have litigated the actual and punitive damages issues in the claim for recission and restitution' — those remedies were based on the same underlying breach of contract by the same parties.
In the present case, however, the district court substantively determined that the two cases would best be tried in separate trials. After this ruling, both parties were precluded from raising the issues presented by Mr. Yapp’s wrongful discharge claim in the overtime action' — these claims were proceeding in separate trials. Thus, Petromanagement’s decision that the second action was precluded with respect to untimely issues is distinguishable from this case, where the motion was timely and district court addressed and rejected the defendant’s motion to consolidate on the merits. While it may be true that Mr. Yapp could have filed both cases in the same lawsuit, once a court determines on the merits that a claim will be tried in a separate suit, the claim is not one that “was or could have been litigated” and, therefore, I believe Mr. Yapp could not, and did not, have a full and fair opportunity to litigate the excluded claim.
III. Waiver & Intent of the Parties
The majority implies that Mr. Yapp waived his right to argue for a full and fair opportunity to litigate and emphasizes the fact that Mr. Yapp could have asked the court to “revisit” its “discretionary” order that the two claims would best be tried separately. Unquestionably, this would have resolved the issue. However, it is not the burden of a plaintiff to anticipate, raise, and negate affirmative defenses for which the defendant clearly has the burden. See, e.g., Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir.1997) (“Res judicata is an affirmative defense on which the defendant has the burden to set forth facts sufficient to satisfy the' elements.”), cert. denied, — U.S. —, 118 S.Ct. 1396, 140 L.Ed.2d 654 (1998); see also Fed.R.Civ.P. 8(c) (“In pleading to a preceding pleading, a party shall set forth affirmatively ... affirmative defense[s]”). If anything, the failure of the defendant to raise the issue of claim preclusion in the first proceeding and its omission as a defense from its original answer should be the potential waiver.
The defense, however, not only did not raise the issue of res judicata in the first lawsuit, it took advantage of the trial court’s decision that the claims would best be tried in separate law suits when it was to its advantage. In the first action, after the claims had been split, the defendant essentially confirmed the district court’s conclusion regarding consolidation by filing a motion to exclude evidence from the second action (wrongful discharge), from being admitted into the first action because the evidence was “irrelevant” and prejudicial because it would cause “confusion of the issues,” would “unduly delay” the trial, and would be a “waste of time.” Aplt’s App., vol. I, at 91-92. Then, after settlement and dismissal, the defense seized the opportunity to again reverse positions and essentially argue that the prejudicial, irrelevant, confusing evidence in the second case should have been presented in the first case.
Finally, the record reflects that had the district court changed its ruling, Mr. Yapp would not have accepted the settlement offer. In a letter to the defendant, Mr. Yapp’s counsel expressly stated that it was accepting the $14,000.00 for the overtime action only. The letter states in pertinent part:
Mr. Yapp has decided to authorize us to file the Stipulation For Dismissal in this matter, in consideration of Excel’s *1237 Fourteen-Thousand-Dollar ($14,000) payment.
This will serve as notice that in seven (7) days from the date of this correspondence, we will disburse the' funds represented by the two checks your office forwarded to us.... It is our understanding that the dismissal of this matter will only determine the claims set forth in Civil Action No. 96-S-1350 [the overtime action], in the U.S. District Court for the District of Colorado.
If you have any objections to the contents of this letter, please notify me of the same no later than September 16, 1997, after which time we will disburse to ourselves and our client the checks forwarded in settlement of Civil Action No. 96-S-1350.
Aplt’s App., vol. I, at 173 (emphasis added). The record does not reflect, and the parties do not argue, that the defendant or his attorney responded with any objections.
It is clear from the letter that Mr. Yapp did not intend to settle the second claim, and the general rule regarding consent judgments is that the intent of the parties should control their preclusive effect:
Consent judgments entered upon settlement by the parties may assume forms that range from simple orders of dismissal with or without prejudice to detailed decrees. Whatever form is taken, the central characteristic is that the court has not actually resolved the substance of the issues presented....
The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties.
18 Wright, Miller & Cooper, Federal Practice & Procedure § 4443 (1981). While it is true that “consent judgments ordinarily support claim preclusion but not issue preclusion,” see id., a consent judgment cannot, in my opinion, support claim preclusion or issue preclusion where there was not a full and fair opportunity to litigate, a problem compounded in this case by the fact that the plaintiff did not intend the preclusive effects the majority’s opinion places on the consent judgment. Moreover, the fact that the parties could not agree to specific language for a detailed consent judgment (hence the simple order of dismissal in this case) does not somehow operate to waive plaintiffs right to a full and fair opportunity to litigate the excluded claim. Both parties chose to proceed without a detailed decree, equally risking an adverse outcome. And, in my opinion, given the district court’s ruling that judicial efficiency warranted separate trials, it was necessary for the defendant in this case to include specific preclusive language in the consent decree or other settlement agreement, in order to avoid the plaintiffs right to a full and fair opportunity to litigate the excluded claim.
Y. Conclusion
According to the Supreme Court, res judicata “has the dual purpose of protecting litigants from the burden of relitigat-ing an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.” Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (cited with approval in 18 Wright, Miller & Cooper, supra § 4403). For the reasons stated above, I simply fail to see how these purposes are effectuated by applying claim preclusion in this case. This was one of those relatively rare cases where the judge ruled that the claims should be tried separately for the purpose of promoting judicial economy — evidently agreeing with the defendant’s later argument that the evidence in the second case was “irrelevant” and prejudicial because it would cause “confusion of the issues,” would “unduly delay” the trial, and would be a “waste of time.”' Aplt’s App., vol. I, at 91-92. Thus, the judge felt and ruled that the claims were not identical when he denied appellant’s motion to consolidate— had they been the identical issue with the same parties, he would have granted the motion to consolidate. While Professors *1238 Wright, Miller and Cooper caution about creating uncertainty in the doctrine of res judicata “in an effort to achieve individualized justice,” 18 Wright, Miller & Cooper, Federal Practice & Procedure § 4430, they also acknowledge that there is a risk associated with the judicial desire for general, broadly applicable rules regarding claim preclusion that do not take into consideration the practical realities of litigation:
To the extent that the newer [broader] rules force litigants to take advantage of improved procedural opportunities for more comprehensive and effective initial litigation they represent a desirable process of continually adapting basic policies to new circumstances. There is a risk, however, that courts may lose sight of the irrational tactical realities that often counsel freedom for litigants to choose whether it is better to forego the possibility of a single comprehensive suit. Contemporary concern for judicial efficiency may augment this risk. Balancing these opportunities and risks will prove one of the major challenges to res judicata doctrine as it evolves in the years to come. The choices to be made will be complicated by the desirability of achieving general rules.
Id. The majority’s position is clearly on one side of this legitimate divide and I am on the other. As I have lost this round, I might ask for reconsideration — a proper thing to do, in my opinion, but only when you lose.